IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| KRISTI KELLEY, | : | |
| | : | |
| *Plaintiff,* | : | Civil Action No.: 1:24-cv-79 TSK |
| | : | |
| v. | : | ELECTRONICALLY FILED |
| | : | 8/25/2024 |
| WEST VIRGINIA UNIVERSITY, | : | U.S. DISTRICT COURT |
| | : | Northern District of WV |
| *Defendant.* | : | |

## COMPLAINT

AND NOW, comes the Plaintiff, Ms. Kristi Kelley, by and through her undersigned counsel, Sean A. Casey, Esquire, and files the following Complaint:

### Nature of the Action

This is an action brought pursuant to the Americans with Disabilities Act Amendments Act (ADAAA), as amended 42 U.S.C. §12101 et. seq., the Age Discrimination in Employment Act of 1967 (ADEA), the Family Medical Leave Act, 29 U.S.C. §2601, the West Virginia Human Rights Act (WVHRA), as well as retaliation for exercising her rights under these various statutes, and the creation of a hostile work environment. The Plaintiff, Ms. Kristi Kelley, seeks declaratory, injunctive and compensatory relief for the discriminatory conduct, retaliation, creation of a hostile work environment, and termination of her position by the Defendant in this matter.

### Parties

1. Plaintiff, Kristi Kelley, is a female adult individual, who at the time of her termination was fifty-three (53) years of age and resided at 945 Southpoint Circle, Morgantown, West Virginia 26501, and now resides at 3969 S. Suntree Way, Boise, Idaho 83706.

2. At all times relevant hereto, the Plaintiff was a qualified individual and otherwise possessed all qualifications necessary to perform the essential functions of her job.

3. Defendant, West Virginia University, is a state university in West Virginia that employs in excess of five hundred employees, with a facility located at 64 Medical Center Drive, Morgantown, West Virginia 26505, and the mailing address for General Counsel of WVU is 105 Steward Hall, P.O. Box 6204, Morgantown, West Virginia 26506.

**Jurisdiction**

4. This Court has jurisdiction over this Complaint pursuant to the Americans with Disabilities Act Amendments Act, 42 U.S.C. §12101 *et seq.*, the Age Discrimination in Employment Act of 1967 (ADEA), the Family Medical Leave Act of 1993, 29 U.S.C. §2601, *et seq.,* and 28 U.S.C. §1331, relating to federal questions.

5. Also, pursuant to 28 U.S.C. §1367 giving the district court jurisdiction over state law claims.

6. Venue is proper in this case pursuant to 28 U.S.C. §1391(b).

**Statements of Fact**

7. The Plaintiff, Kristi Kelley, (hereinafter referred to as "Ms. Kelley") first began working for West Virginia University (hereinafter referred to as "WVU"), School of Public Health, Department of Epidemiology and Biostatistics on or about September 1, 2002, as a research instructor.

8. Ms. Kelley is fifty-three (53) years of age, and significantly older than many of the nontenured professors in the department.

9. During her twenty-one (21) years as an employee of WVU, Ms. Kelley's job duties involved completing full-time research, including seeking and collaborating on the submission of applications for external resources to support her position and related research efforts.

10. Throughout Ms. Kelley's employment as a research instructor she had at all times performed at the highest levels, and she was not under any current discipline or placed on any Performance Improvement Plan.

11. She has an exceptional history of work performance with "meritorious" ratings she earned during the entirety of her career with the Defendant, and at the time of her termination she was earning $51,000.00 annually, which was 100% grant funded.

12. Due to Ms. Kelley's medical issues she has regarding long-haul COVID, and its sequela, she requested an accommodation to work remotely.

13. Her medical condition had developed during the COVID pandemic and has continued since that time, necessitating her to primarily work from home due to her symptoms, which her new Chair of the Department, Bethany Barone Gibbs, and her Dean, Sarah Woodrum, were both aware.

14. This means that Ms. Kelley did not require any office space at WVU, though in the past there has been a space designated for her use.

15. It was certainly known to the employer that Ms. Kelley continued to suffer from symptoms of long-haul COVID, which requires an accommodation of working remotely.

16. It is also well known that the new Department Chair Bethany Gibbs in particular, is not a proponent of individuals working remotely and has stated so on more than one occasion.

17. During Ms. Kelley's employment with the Defendant, the new Department Chair, Dr. Gibbs, had stated multiple times she wanted faculty to be present at the University.

18.     Despite the fact that the work that Ms. Kelley performed did not require her to be present at WVU, Dr. Gibbs made it very clear that this was what she wanted and inferred that she would get what she wanted.

19.     On May 5, 2023, Ms. Kelley attended a Zoom meeting with several administrative personnel and legal counsel, wherein she was advised that her contract was not going to be renewed for the coming year.

20.     Ms. Kelley was informed that her contract was not going to be renewed strictly for financial reasons, and it was acknowledged that there were no issues regarding performance, productivity, or any discipline issues.

21.     As part of the discussion, Ms. Kelley's counsel did pose the query several times about the possibility of Ms. Kelley securing some grant money that could be used as compensation for the coming year.

22.     Counsel for WVU had specifically indicated at that time that they were not going to "answer a question based on a hypothetical."

23.     After said meeting, Ms. Kelley was able to secure extramural funding in the amount of $10,000.00 to continue research that is based at least in part on a joint project.

24.     Ms. Kelley's employment contract had always been funded by external sources, so this extramural funding she had secured would satisfy the criteria.

25.     The subcontract also had provisions for salary and fringe benefits, as well as facilities and administrative costs, ensuring that her continued employment would be at no cost to WVU.

26.     Said subcontract was approved by Interim Dean Sarah Woodrum and had already cleared by the WVU's Office of Sponsored Programs on or about May 26, 2023.

27. Nevertheless, Interim Dean Erik Carlton, Interim Dean Sarah Woodrum, and Chair Bethany Gibbs, in very short and terse responses to inquiry about the academic year beginning in fall of 2023, had indicated prior to July 20, 2023 that despite funding, they will not be renewing the Plaintiff's contract.

28. Ms. Kelley believes that the real reason she was not being renewed was due to her medical issues and necessary accommodations, given that she had secured partial funding for that academic year beginning fall of 2023.

29. WVU is only obligated to pay her out of the money that she had secured through that grant, and they would have received the benefit of having a faculty member who is essentially free and had consistently performed at a level of excellence, which was recognized in her past performance reviews.

30. Given the situation of WVU at that time, it would seem that they were in extreme need of persons of her caliber, who were performing at essentially no cost to the University.

31. Also, not having grant money that sufficiently covered her stated salary had never in the past been an issue with regard to her employment with WVU.

32. Her salary had always been dependent on the amount of money that she brought in from a grant standpoint, basically an "eat what you kill" agreement, where her salary was dependent on how much funding she had be it 5% or 100%.

33. During Ms. Kelley's twenty years of employment with WVU, she fluctuated several times to less than her salary, but it had never been raised as an issue by the Defendant.

34. It should be mentioned that the Plaintiff worked primarily with her husband, Dr. George Kelley, in conducting research and securing grants for research that he had been performing.

35. Dr. George Kelley has a national reputation and has brought in a very large number of grants as well as reputation to WVU.

36. It should be noted that prior to the Plaintiff's termination, Dr. George Kelley had always been allowed to use certain incentive money he set aside from his own salary in order to cover part of the Plaintiff's salary, which money has now been requisitioned by the Defendant and was disallowed by the Defendant during the termination.[1]

37. At the Plaintiff's termination meeting there was no explanation offered for why the incentive money could not be used to fund her position as it had been in the past.

38. The Interim Dean Carlton, Interim Dean Sarah Woodrum, and Department Chair Bethany Gibbs continued to deny the contract renewal of Ms. Kelley, that was supposedly denied for financial reasons, even after Ms. Kelley had secured funding.

39. Ms. Kelley and others are well aware of the fact that Dr. Gibbs is not a proponent of employees performing their work remotely, as Dr. Gibbs has stated the same multiple times.

40. Ms. Kelley requires this work accommodation, due to her medical issues that WVU was well aware of, in order to perform the essential functions of the job.

41. WVU was no longer interested in providing this accommodation to Ms. Kelley and has attempted to terminate her under the guise of financial concerns and utilizing a RIF to hide what would otherwise be conduct that was discriminatory and therefore illegal.

42. The Plaintiff was terminated on May 5, 2023, and Defendant's alleged reason being due to financial reasons.

---

[1] Understand that this was Dr. Kelley's money that he set aside from his own salary. It was now being requisitioned by the University to help their bond rating. The Plaintiff and Dr. George Kelley maintain that this is an illegal practice on the part of the Defendant WVU.

43. On or about July 24, 2023, Ms. Kelley, by and through her counsel, filed a Charge for Discrimination and Retaliation with the EEOC. (Exhibit 1)

44. On or about May 29, 2024, the EEOC issued a Notice of Right to Sue. (Exhibit 2)

## COUNT I: DISABILITY DISCRIMINATION – ADAAA & WVHRA

45. Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

46. The Defendant expressed discriminatory animus and committed discriminatory acts against the Plaintiff in violation of the Americans with Disabilities Act Amendment Act, as amended 42 U.S.C. §12010 et. seq., and the West Virginia Human Rights Act (WVHRA).

47. The Plaintiff has been diagnosed with medical conditions, making her disabled within the meaning of the ADAAA, and this definition would include regarding as or having a history of disability.

48. The Defendant was made aware of Ms. Kelley's disabilities and her requested accommodations that she made as a result of these disabilities.

49. The Defendant in this case repeatedly made hostile comments concerning their opposition to the Plaintiff's requested accommodation due to her disability, and their perception that they would be unable to accommodate her.

50. Defendant's actions were done with malice or reckless disregard of Plaintiff's federally protected rights.

51. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer, lost wages and benefits, as well as humiliation, inconvenience, mental distress and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant, and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, liquidated damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

## **COUNT II: AGE DISCRIMINATION – ADEA & WVHRA**

52. Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

53. Plaintiff was fifty-three (53) years of age when terminated by the Defendant.

54. Plaintiff avers that there were noted differences in the way she was treated, and that younger employees were treated more favorably.

55. Plaintiff is aware of similarly situated employees that were younger and less experienced yet received renewal contracts.

56. Plaintiff is aware of other individuals over the age of forty (40) that have been similarly terminated or otherwise driven from the Defendant's employment, despite seniority and national reputation.

57. As a direct and proximate result of Defendant's actions in violation of the ADEA and WVHRA, Plaintiff suffered lost wages and benefits, lost employment opportunities and future income, as well as humiliation, inconvenience, mental distress and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant, and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, liquidated damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

## **COUNT III: RETALIATION – FMLA, ADAAA & ADEA & WVHRA**

58. Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

59. Plaintiff had advised and discussed her medical conditions and requested accommodations, and rights to be free of discrimination with the Defendant, which constituted protected activity under these statutes.

60. As a result, Plaintiff was harassed, humiliated, discriminated, and terminated by the Defendant in retaliation for the disclosure of her medical conditions and the assertion of her rights under the FMLA, ADAAA, ADEA, and WVHRA.

61. Under the FMLA, ADAAA, ADEA, and the WVHRA, a retaliatory action by an employer toward an employee for exercising their statutory rights is a violation of that statute and against public policy.

62. As a direct and proximate result of Defendant's actions in violation of the FMLA, ADAAA, ADEA, and WVHRA, Plaintiff suffered lost wages and benefits, lost employment

opportunities and future income, as well as humiliation, inconvenience, mental distress and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant, and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, liquidated damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

## COUNT IV: CREATION OF A HOSTILE WORK ENVIRONMENT

63. The Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

64. Ms. Kelley had disclosed her medical conditions, and had requested accommodations, which constituted protected activity under the ADAAA and WVHRA.

65. She had reported discrimination to the Defendant, and to various agents employed by the Defendant.

66. As described above, the Defendant subjected the Plaintiff to a hostile work environment on the basis of her age and disability.

67. The Plaintiff maintains that the Defendant's acts were intentional and retaliatory, and created a hostile work environment in response to the Plaintiff's assertion of her rights under the ADAAA, ADEA, and WVHRA.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant, and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, liquidated damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A) Grant a permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert and participation with them, from engaging in, ratifying, or refusing to correct, employment practices which interfere with the exercise of rights and/or discriminate in violation of the ADAAA, FMLA, ADEA, and WVHRA;

B) Order Defendant to institute and implement training programs, policies, and practices and programs designed to ensure the Defendant provides proper leave and does not retaliate and/or interfere with those who engage in statutorily protected activity;

C) Order Defendant to make whole Kristi Kelley, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, compensate her for lost benefits, and all other affirmative legal and equitable relief necessary to eradicate the effects of its unlawful employment practice;

D) Order Defendant to pay Plaintiff compensatory damages in an amount to be determined at trial;

E) Order Defendant to pay Plaintiff the reasonable attorney's fees and costs and other legal expenses incurred by the Plaintiff in this matter;

F) Order Defendant to remove and expunge, or to cause to be removed or expunged, all negative, discriminatory, and/or defamatory memorandum or other documentation from the Plaintiff's record of employment; and

G) Award the Plaintiff such other legal and equitable relief as the Court deems appropriate and just.

Respectfully submitted

/s/ Sean A. Casey
Sean A. Casey (WV ID #7643)

**SEAN A. CASEY, ATTORNEY AT LAW**
The Pickering Building
960 Penn Avenue, Suite 1001
Pittsburgh, PA 15222
T: (412) 201-9090
F: (412) 281-8481
E: sean@caseylegal.com